IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01811–REB–KMT

UNITED STATES OF AMERICA, for the use and benefit of
DARO TECH, LTD., a Colorado corporation,

    Plaintiffs,

v.

CENTERRE GOVERNMENT CONTRACTING GROUP, LLC, a Colorado limited liability
company,
BERKLEY REGIONAL INSURANCE COMPANY, a Colorado corporation,
KIEWIT BUILDING GROUP, INC.,
TURNER CONSTRUCTION COMPANY, a New York corporation,
KIEWIT-TURNER A JOINT VENTURE, a Joint Venture doing business in Colorado,
TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut
corporation,
FEDERAL INSURANCE COMPANY, a New Jersey corporation,
FIDELITY AND DEPOSIT COMPANY OF MARYLAND/ZURICH AMERICAN
INSURANCE COMPANY, an Illinois corporation,
LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation, and
THE CONTINENTAL INSURANCE COMPANY, an Illinois corporation,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on the following motions:

1.      "Kiewit-Turner's Motion to Dismiss Second and Fourth Claims for Relief

Against Kiewit-turner, Or, in the Alternative, Motion to Stay" (Doc. No. 30 [K-T's Mot.], filed

August 23, 2013), to which Plaintiff filed its response on September 11, 2013 (Doc. No. 61

[Resp. K-T's Mot.]) and Defendant Kiewit-Turner filed its reply on September 25, 2013 (Doc. No. 70 [Reply K-T's Mot.]);

2.      "Kiewit-Turner Sureties' Motion to Dismiss Plaintiff's Second and Fourth Claims for Relief, Or, in the Alternative, Motion to Stay" (Defendants Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland/Zurich American Insurance Corporation, Liberty Mutual Insurance Company, and The Continental Insurance Company [K-T Sureties]) (Doc. No. 33 [K-T Sureties' Mot.]), to which Plaintiff filed its response on September 11, 2013 (Doc. No. 62 [Resp. K-T Sureties' Mot.]) and K-T Sureties filed its reply on September 25, 2013 (Doc. No. 71 [Reply K-T Sureties' Mot.]);

3.      "Turner Construction Company's Motion to Dismiss" (Doc. No. 37 [Turner's Mot.], filed August 23, 2013), to which Plaintiff filed its response on September 13, 2013 (Doc. No. 64 [Resp. Turner's Mot.]) and Defendant Turner Construction Company filed its reply on September 26, 2013 (Doc. No. 75 [Turner's Reply]);

4.      "Defendant Centerre Government Contracting Group, Llc's Motion to Dismiss Plaintiff's First, Third, Fifth, Sixth and Seventh Claims for Relief Or, in the Alternative, Motion to Stay the Proceedings" (Doc. No. 51 "Centerre's Mot.], filed September 10, 2013), to which Plaintiff filed its response on September 25, 2013 (Doc. No. 72 [Response. Centerre's Mot.]) and Centerre filed its reply on October 9, 2013 (Doc. No. 76 [Reply Centerre's Mot.]);

5.      "Defendant Berkley Regional Insurance Company's Motion to Dismiss Plaintiff's First and Third Claims for Relief Or, in the Alternative, Motion to Stay the Proceedings" (Doc. No. 55 [Berkley's Mot.], filed September 10, 2013), to which Plaintiff filed its response on

September 25, 2013 (Doc. No. 73 [Resp. Berkley's Mot.]) and Berkley filed its reply on October

9, 2013 (Doc. No. 77 [Reply Berkley's Mot.]); and

      6.     "Kiewit Building Group's Motion to Dismiss"[1] (Doc. No. 68 [Kiewit Building's

Mot.], filed September 20, 2013), to which Plaintiff filed its response on September 26, 2013

(Doc. No. 74 [Resp. Kiewit Building's Mot.]) and Defendant Kiewit Building Group filed its

reply on October 10, 2013 (Doc. No. 78 [Kiewit Building's Reply]).

      These motions are ripe for recommendation and review.

**STATEMENT OF THE CASE**

      On August 31, 2010, Kiewit-Turner ("K-T") and the United States Department of

Veterans Affairs ("VA") entered into a contract ("Prime Contract") for renovations to the

Replacement Medical Center Facility in Denver, Colorado, a hospital owned and operated by the

VA (the "Project").  (Doc. No. 1 [Compl.], ¶ 20.)  On or about September 8, 2010, K-T, as

principal, and K-T's Sureties, as sureties, executed a payment bond in compliance with 40

U.S.C. §3131(b)(2) for the protection of all persons supplying labor and/or materials in the

prosecution of the work provided for in the Prime Contract ("Kiewit-Turner's Payment Bond").

(*Id.*, ¶ 21, Ex. A.)  On or about April 18, 2011, Defendant Centerre Contracting Group

("Centerre") entered into a written contract with K-T to perform labor and supply materials in

the prosecution of the work provided for in the Prime Contract (the "Subcontract").  (*Id.*, ¶ 22.)

On or about April 19, 2011, Centerre, as principal, and Centerre's Surety (Berkely Regional

---

      [1]On September 16, 2013, Defendant Kiewit Building Group, Inc., was substituted as a
defendant for Kiewit Corporation.  (*See* Doc. Nos. 65 & 67.)

3

Insurance Company), as surety, executed a payment bond in compliance with 40 U.S.C.

§3131(b)(2) for the protection of all persons supplying labor and/or materials in the prosecution

of the work provided for in the Subcontract ("Centerre's Payment Bond").  (*Id.*, ¶ 23, Ex. B.)  On

or about May 17, 2011, Centerre awarded Plaintiff Daro Tech the contract for asbestos

abatement and building demolition work for the Project (the "Sub-subcontract").  (*Id.*, ¶ 24.)

Daro Tech alleges the Project's schedule was repeatedly suspended and delayed, causing

Daro Tech to incur overhead and operating expenses not originally anticipated.  (*Id.*, ¶¶ 26, 28.)

Daro Tech also alleges the original site report, which warranted the amount and location of

asbestos, significantly understated the amount and inaccurately described the location of the

asbestos, which increased both the duration and cost for Daro Tech's performance on the Project.

(*Id.*, ¶¶ 31, 32.)

Daro Tech submitted invoices and applications for payment to Centerre.  (*Id.*, ¶ 36.)

Daro Tech asserts that Centerre issued several change orders adjusting the value of the Sub-

subcontract.  (*Id.*, ¶¶ 37, 28, 41, 47.)  After the first amendment, Centerre requested that Daro

Tech submit future requests for adjustments using Change Order Proposals, and Daro Tech

began submitting Change Order Proposals in January 2012.  (*Id.*, ¶ 39.)  On July 17, 2012, Daro

Tech furnished the last of its labor and materials to the Project.  (*Id.*, 43.)  From July 2012

through May 2013, Daro Tech attempted to obtain payments for amounts due and owing on the

Project.  (*Id.*, ¶ 44.)

On May 8, 2013, Centerre issued its final Amendment to the Sub-subcontract, which

increased the value of the Sub-subcontract from $710,273 to $1,533,052 due to added scope

work, delay costs, and expanded general conditions. (*Id.*, ¶ 47.)  Plaintiff alleges this amendment reflected only some of the work for which Daro Tech had submitted Change Order Proposals, and it was preceded by unilateral change orders issued by the VA, pursuant to which Centerre was required to pay Daro Tech in full for the amount authorized by the VA of $822,779.  (*Id.*, ¶¶ 48–49.)  Of this amount, $449,000 was intended to reimburse Daro Tech for delay and additional general condition costs, which the remaining amount was intended to reimburse Daro Tech for Added Scope Work.  (*Id.*, ¶ 49.)

Daro Tech alleges the VA issued payment in the amount of $822,779 to Defendant K-T, which then passed this amount to Centerre with explicit instructions to pay it to Daro Tech.  (*Id.*, ¶ 50.)  Instead, Daro Tech alleges Centerre has paid only $237,600 of amount authorized by the VA's change orders.  (*Id.*, ¶ 51.)  Additionally, Daro Tech alleges Centerre has not paid Daro Tech $305,985 on the adjusted value of the Sub-subcontract.  (*Id.*, ¶¶ 51, 52.)  Finally, Daro Tech alleges on May 30, 2012, Centerre issued a change order deducting $73,540 from the amount authorized by the VA for payment to Daro Tech for payment of attorney's fees incurred by Centerre defending an action brought by Daro Tech against Centerre in the State of Colorado. (*Id.*, ¶¶ 54, 55.)  Daro Tech alleges the amount still due and owing for materials furnished or supplied to Centerre and K-T, and for labor done or performed by Daro Tech for Centerre and K-T, is $874,394, plus interest, costs, and attorneys' fees.  (*Id.*, ¶ 59.)

Plaintiff asserts the following claims for relief:

1.　　First Claim for Relief under the Miller Act against Centerre and Centerre's Surety (hereinafter "Berkley");

2. Second Claim for Relief under the Miller Act against Kiewit-Turner and Kiewit-Turner Sureties;

3. Third Claim for Relief for Quantum Meruit against Centerre and Berkley;

4. Fourth Claim for Relief for Quantum Meruit against Kiewit-Turner and Kiewit-Turner Sureties;

5. Fifth Claim for Relief for Breach of Contract against Centerre;

6. Sixth Claim for Relief for Breach of the Covenant of Good Faith and Fair Dealing against Centerre; and

7. Seventh Claim for Relief for Unjust Enrichment against Centerre.

(*See* Compl.)

## LEGAL STANDARD

### *1.    Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure  12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### 2. *Failure to State a Claim Upon Which Relief Can be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*, 129 S. Ct. at 1949

(citation omitted).

## ANALYSIS

*1.*      *Turner Construction and Kiewit Building Group's Motions to Dismiss*

Turner Construction and Kiewit Building Group move to dismiss on the bases that no

cause of action is asserted against them and because any cause of action asserted against them

would not be ripe.  (*See* Turner's Mot. and Kiewit Building's Mot.)

Defendants Turner Construction and Kiewit Building Group argue that the Complaint

makes only two allegations against them.  First, the Complaint alleges the defendants' state of

incorporation and principal place of business are located in New York.  (Compl., ¶¶ 6, 7.)

Second, the Complaint alleges the defendants are members of the K-T joint venture.  (*Id.*, ¶¶ 8.)

Defendants argue that the complaint is devoid of any assertion that they are legally liable to

Plaintiff.

As previously noted, to withstand a motion to dismiss, a complaint must contain enough

allegations of fact "to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 662.

> Even though modern rules of pleading are somewhat forgiving, a complaint still
> must contain either direct or inferential allegations respecting all the material
> elements necessary to sustain a recovery under some viable legal theory.  The
> plausibility standard requires that relief must plausibly follow from the facts
> alleged, not that the facts themselves are plausible.

*Jordan–Arapahoe, LLP v. Board of County Commissioners of the County of Arapahoe*, Nos.

08–cv02790–PAB–MJW, 08–cv–02794–PAB–MJW, 2009 WL 2924777, at *2 (D. Colo. Sept. 9,

2009) (internal quotation marks and citations omitted).  The ultimate duty of the court is to

"determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Plaintiff's Complaint does not provide the notice required by Fed. R. Civ. P. 8 and the *Iqbal* standard.  Though Plaintiff names Kiewit Building Group, Inc., and Turner Construction Company as defendants, Plaintiff has failed to allege facts that demonstrate what role, if any, these defendants played in any of the alleged claims.

In its responses to the motions to dismiss, Plaintiff argues that it intended to assert only two claims against these defendants—the Second Claim for Relief under the Miller Act, 40 U.S.C. § 3131(b)(2), and the Fourth Claim for Relief under *quantum meruit*—which it also asserted against Defendant K-T.  (Resp. Turner's Mot. at 4; Resp. Kiewit Building's Mot. at 4.) Plaintiff argues it is not required to plead the defendants' liability; rather, Plaintiff argues, it is sufficient for Plaintiff to allege the defendants were members of the K-T joint venture.  (*Id.*) However, the defendants are correct that no claim is expressly asserted against Defendants Kiewit Building Group, Inc. or Turner Construction Company; nor has Plaintiff expressly asserted in the Complaint that liability should be imputed to these defendants as general partners of Defendant K-T.[2]

---

[2]The court notes that Plaintiff also failed to correct this deficiency in its proposed Amended Complaint, which is discussed *infra*.

Defendants Kiewit Building Group, Inc., and Turner Construction Company's motions to dismiss should be granted and the claims against them dismissed for failure to meet the governing pleading standard.

**2.     *Motions to Dismiss Based on Allegedly Premature Claims under Contract Disputes Act***

Defendants K-T and K-T Sureties (Defendants Travelers Casualty and Surety Company of America, Federal Insurance Company, Fidelity and Deposit Company of Maryland/Zurich American Insurance Corporation, Liberty Mutual Insurance Company, and The Continental Insurance Company) move to dismiss for failure to state a claim upon which relief can be granted on the basis that Plaintiff's claims are premature.  (*See* K-T's Mot. at 8–12; K-T Sureties' Mot. at 8–12.)  Defendants Centerre and Berkley move to dismiss on the basis that this Court lacks jurisdiction over Plaintiff's claims because Plaintiff's claims are premature.  (*See* Centerre's Mot. at 6–11; Berkley's Mot. at 6–11.)

Defendants argue that because the Project is federally owned, the contractor's work is subject to the Contract Disputes Act ("CDA"), 41 U.S.C. § 7101, which establishes the procedures for handling claims relating to federal government contracts.  Under the CDA, if the contractor is dissatisfied with the Contracting Officer's decision on a claim, the contractor may (I) appeal that decision to an agency board of contract appeals within 90 days of receipt of the decision or (ii) bring suit on the claim in the U. S. Court of Federal Claims within twelve months.  41 U.S.C. §7104(a), (b).

Defendants K-T and K-T Sureties argue that the claims against them are premature, and thus should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff is required by

law and by its sub-subcontract with Centerre to exhaust the change order and disputes processes established by federal law under the Contract Disputes Act and by Paragraph 35 of Plaintiff's Sub-subcontract.  Defendants Centerre and Berkley assert that this Court lacks subject matter jurisdiction over Plaintiff's claims against them because Plaintiff failed to comply with the contractually-mandated claims procedure.

Specifically, Defendants argue that Plaintiff initiated this process through its submission of change order proposals to Centerre.  Defendants contend that Plaintiff must abide by the contractual dispute resolution process, which requires the claim to "flow-up" to the VA for evaluation and resolution.  Defendants argue that, though Plaintiff alleges its change order proposals for delay and extra work have been presented and reviewed through Centerre and K-T to the VA via this changes process (*see* Compl.¶¶ 40, 42, 48, 50), and Plaintiff alleges the VA has approved certain of its change order proposals and Plaintiff has received payment for some change order proposals (*id.*, ¶¶ 49, 51), other of Plaintiff's change order proposals remain pending.  However, Defendants argue, Plaintiff has not alleged that it has completed the statutory and contractual changes and disputes processes, and Plaintiff may not abandon the process now, before its conclusion.

Plaintiff, in its responses, argues that Defendants' argument is contrary to controlling law in Miller Act claims.  Plaintiff cites *Fanderlik-Locke Co. V. United States, for Use of M.B. Morgan*, 285 F.2d 939 (10th Cir. 1960).  Plaintiff argues that the *Fanderlik* court held that because "[t]he subcontractor has no standing before the Contracting Officer or the Board of Contract Appeals . . . [t]he remedy for one seeking to recover for labor and materials furnished

under a government contract is under the Miller Act . . . ."  *Fanderlik*, 285 F.2d at 942.  The

*Fanderlik* court noted that

> The subcontract provided that the subcontractor should furnish material and
> perform labor in accordance with the general conditions of the contract between
> the owner and the contractor and "in accordance with the Drawings and the
> Specifications attached hereto which form a part of a Contract between the
> Contractor and the Owner * * * and hereby become a part of this Contract."  The
> parties to the subcontract agreed "to be bound by the terms of this Agreement, the
> A.I.A. General Conditions attached, the drawings and specifications attached as
> far as apprehensible to this subcontract * * *."  It was further provided that the
> subcontractor should be bound to the contractor "by the terms of the Agreement,
> General Conditions, Drawings and Specification, and to assume toward him all
> the obligations and responsibilities that he, by those documents assumed toward
> the Owner."

*Id.*  The court held that the subcontract's language, which referenced the general conditions of

the prime contract and related generally to the performance of the subcontract but not to the

settlement of disputes or the subcontractor's right to sue under the Miller Act, did not manifest

an intention of the parties that the subcontractor had to comply with the general provisions

before it could sue under the Miller Act.  *Id.* at 943.

In this case, the subcontract states:

> The Subcontractor agrees to make any claims for extension of time or for
> damages for delays or otherwise to the Contractor in the same manner as provided
> in the General Contract for like claims with the contractor upon the Owner, and in
> such time will enable the Contractor to present such claims to the Owner for
> payment of recognition; and the Contractor will not be liable to Subcontractor on
> any claim not timely or properly presented, or until allowed by the Owner.

(Doc. No. 54-2 at 2.)[3]  Defendants argue that the language of the sub-subcontract in this case clearly makes Plaintiff subject to the pass-through disputes resolution procedure of Centerre's contract.  However, as in *Fanderlik*, the sub-subcontract does not mention the Miller Act or the Plaintiff's right to sue under the Miller Act.  *Fanderlik*, 285 F.2d at 943.  Though Defendants argue that Section 19 of Centerre's subcontract with K-T provides that K-T will allow Centerre to pass through claims to the VA in K-T's name, the sub-subcontract does not specifically reference Section 19 of Centerre's subcontract with K-T.

The court also notes that the provisions of the CDA do not apply to subcontractors. *Tradesmen Intern., Inc. v. U.S. Postal Service*, 234 F. Supp.2d 1191, 1197 (D. Kan. 2002) (citing *Eastern, Inc. v. Shelly's of Delaware, Inc.*, 721 F. Supp. 649, 650 (D.N.J. 1989) (explaining that, rather than allow subcontractors to proceed against the government directly in district court, Congress allows subcontractors to pursue their remedies through the Miller Act)).  Though the "[r]ight to sue under the Miller Act may be waived by clear and express provisions in the contract between the prime contractor and the subcontractor," *United States for Use of DDC*

------

[3]The plaintiff refers to the sub-subcontract in its Complaint, and all parties refer to the sub-subcontract in their briefing. However, only Centerre and Berkley have attached the sub-subcontract to their motions to dismiss.  It is permissible for a court to look beyond the four corners of the complaint when deciding a Rule 12(b)(1) motion to dismiss. *See Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  When deciding a Rule 12(b)(6) motion to dismiss, if a document is not incorporated by reference or attached to the complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  Plaintiff does not dispute the authenticity of the sub-subcontract, and as it is central to Plaintiff's claims, the court will consider it without converting the motion into a motion for summary judgment.

*Interiors, Inc. v. Dawson*, 895 F. Supp. 270, 272 (D. Colo. 1995) (citing *United States for Use of B's Co. v. Cleveland Elec. Co. of S.C.*, 373 F.2d 585, 588 (4th Cir.1967)), "such a 'drastic curtailment' of a subcontractor's rights will not be read into a general agreement by the subcontractor to be bound by the terms of the prime contract," *DDC Interiors*, 895 F. Supp. at 272 (citing *Central Steel Erection Co. v. Will*, 304 F.2d 548 (9th Cir.1962); *Fanderlik*, 285 F.2d 939). In *DDC Interiors*, the court found that, because the subcontract did not mention the Miller Act and the prime contract's disputes clause was not specifically referenced anywhere in the subcontract, incorporation language in the subcontract did not effect waiver of the plaintiff's Miller Act rights. 895 F. Supp. at 273–74. Thus, absent a specific reference to the CDA procedures in the sub-subcontract in this case, the court cannot find that the parties intended for the plaintiff to be required to comply with such procedures before it could maintain an action under the Miller Act.

Defendants argue that the Denver District Court ("State Court") dismissed Plaintiff's claims for lack of jurisdiction, finding the dispute must be resolved under the CDA and the FAR. (*See* Doc. No. 30-1.) The State Court based its ruling on a case in the Maryland Court of Special Appeals case, *Skanska USA Bldg., Inc. v. Smith Mgmt. Constr. Inc.*, 967 A.2d 827 (Md. App. 2009). (Doc. No. 30-1.) However, the *Skanska* court found that, though the subcontractor-plaintiff in that case could not pursue its claims until it had exhausted the CDA procedures, the state circuit court had erred in dismissing the subcontractor-plaintiff's claims with prejudice.

*Skanska*, 967 A.2d at 829.[4]  The *Skanska* court vacated the order dismissing the complaint and remanded the case to the circuit court to enter an order staying any further proceedings on the merits pending completion of proceedings under the CDA.  967 A.2d at 829.

The *Skanska* court also found that the provision of the original contract that provided a mechanism for the resolution of disputes was "expressly incorporated" into the subcontract. *Skanska*, 967 A.2d at 829, 832, 837.  As explained *supra*, however, this court cannot find that the general, rather than specific, incorporation by reference of the prime contract is sufficient to waive the plaintiff's Miller Act rights.  *See DDC Interiors*, 895 F. Supp. at 273.

Moreover, the claims before the State Court did not involve the Miller Act.  (*See* Doc. No. 30-1.)  Therefore, the State Court did not determine whether there was a clear and express waiver of the plaintiff's rights to sue under the Miller Act.  In this case, the plaintiff specifically asserts Miller Act claims.  For the foregoing reasons, this court finds it is not bound by the State Court's decision, which did not assert Miller Act claims.

Accordingly, Defendants' motions to dismiss on the basis that Plaintiff's claims are premature properly are denied.

**3.**     ***Centerre and Berkley's Motions to Dismiss Based on Failure to Assert a Federal Question and for Lack of Diversity***

Finally, Defendants Centerre and Berkley argue that, even if Plaintiff's claims are not premature, this court does not have subject matter jurisdiction over Plaintiff's claims because

---

[4]The State Court in this case dismissed the case without prejudice for lack of jurisdiction. (*See* Doc. No. 30-1.)

Plaintiff has failed to raise a federal question, and the Court does not have diversity jurisdiction

under 28 U.S.C. § 1332.  The defendants assert that, while Plaintiff has labeled its bond claim

(Claim One) as a "Miller Act" claim, it is not one.  The "Miller Act," 40 U.S.C. §§ 3131–3134,

states:

> …(b) Type of bonds required.--Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded…

40 U.S.C. §§ 3131 (emphasis added).  Defendants argue that the payment bond issued by

Berkley on behalf of Centerre, which Plaintiff relies upon for its "Miller Act" Claim (see

Compl., ¶¶ 63–73, Ex. B), is not a bond furnished "to the Government," but rather it was

furnished to K-T, for K-T's benefit.

The plain language of the statute makes clear that the Miller Act provides a cause of

action only on the payment bond between the general contractor and the United States.  Section

3131(b) requires a payment bond between a contractor and the government; the right to bring a

civil action under section 3133(b) is "on the payment bond" required by section 3131(b).  *See* 40

U.S.C. § 3131(b); 40 U.S.C. § 3133(b); *Tri-State Road Boring, Inc. v. United States Fid. &*

*Guar. Co.*, 959 F. Supp. 345, 347 (E.D. La. 1996)(Miller Act contains a "specific requirement

that a payment bond be furnished to the United States when the work is a public work"); *Capps*

*v. Fid. & Dep. Co. of Md.*, 875 F. Supp. 803, 808 (M.D. Al. 1995)("By statute, the payment bond

must run to the benefit of the United States, and subcontractors and suppliers are permitted to

sue on the bond in federal court in the name of the United States.").  *See also Gen. Elec. Supply*

*Co. v. United States Fid. & Guar. Co.*, 11 F.3d 577, 579–580 (6th Cir. 1993)("[A] laborer or materialman working on a public building or public work of the United States who has not been paid in full can sue in federal court on the payment bond required in section [3131(b)].") (internal quotations omitted); *Dallas G. Olson v. W.H. Cates Constr. Co., Inc.*, 972 F.2d 987, 989 (8th Cir. 1992) (noting that every person who furnished labor or material has the right to sue on the payment bond procured by the general contractor).  Moreover, "[a] subcontractor's right to sue for recovery under the Miller Act is traditionally limited to a general contractor's payment bond." *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 220 (5th Cir. 2912).  Here, Plaintiff's suit based on a payment bond issued in conjunction with the subcontract, not the prime contract, does not fall under the Miller Act.  As such, this Court lacks federal question subject-matter jurisdiction over Defendants Centerre and Berkley as to Plaintiff's First Claim for Relief asserted against Defendants Centerre and Berkley, and the claim properly is dismissed.

Defendants Centerre and Berkley also argue that this Court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332.  The court need not address this argument, because even with the dismissal of the First Claim for Relief asserted against Defendants Centerre and Berkley, this court still has original jurisdiction over the case pursuant to 28 U.S.C. § 1331 because of the remaining federal question asserted against Defendants K-T and K-T Sureties. Defendants Centerre and Berkley also urge the court not to exercise supplemental jurisdiction over the remaining state tort claims.  In an action over which it has federal question jurisdiction, a federal court may exercise supplemental jurisdiction over state law claims which form part of the same case or controversy. See 28 U .S.C. § 1367(a).  The court may decline to exercise

supplemental jurisdiction over a state law claim when it has dismissed *all* claims over which it has original jurisdiction.  *See id.* § 1367(c)(3) (emphasis added).  *Exum v. U.S. Olympic Committee*, 389 F.3d 1130 (10th Cir. 2004); *cf. United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").  Here, because the court has not recommended dismissal of all the claims over which it has original jurisdiction, the court may not decline to exercise supplemental jurisdiction over the state tort claims.

**4.**     ***Motions to Dismiss Quantum Meruit and Unjust Enrichment Claims for Failure to State a Claim***

Defendants Centerre and Berkley move to dismiss Plaintiff's Third Claim for Relief for Quantum Meruit asserted against them and also move to dismiss Plaintiff's Seventh Claim for Relief for Unjust Enrichment.  Defendants K-T and K-T Sureties move to dismiss Plaintiff's Fourth Claim for Relief for Quantum Meruit asserted against them.

The defendants argue that Plaintiff's claims for quantum meruit and promissory estoppel are barred by the existence of a controlling agreement.  At the outset, the court notes that the fact that Plaintiff may not be able to recover on both its breach of contract claims and its claims for quantum meruit and unjust enrichment does not, however, preclude it from pleading multiple theories of recovery.  *Hemman Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 860 (Colo. App. 2007).

Thus, the court turns to whether Plaintiff has pleaded a plausible claim for quantum meruit or for unjust enrichment.  Under Colorado law, a plaintiff seeking to recover under a

theory of quantum meruit, or unjust enrichment, must establish that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *Salzman v. Bachrach*, 996 P.2d 1263, 1265–66 (Colo. 2000).

As to the first element, Defendants Centerre and Berkley argue that Plaintiff has failed to show that it will not, at some point, receive compensation for the alleged additional work.  The defendants argue that Plaintiff will receive payment after approval of the claims and that this element is not satisfied unless Plaintiff's claims have been denied.  The court agrees with Plaintiff that it has plausibly alleged that it provided labor and materials in prosecution of its work, that such labor and materials were provided at Plaintiff's expense, and that Plaintiff has not been paid in full for the labor and materials.  (Compl., ¶¶ 31–35, 86.)

Regarding the second element, Defendants K-T and K-T Sureties and Defendants Centerre and Berkley contend that Plaintiff has not stated what benefits the defendants received from the work Plaintiff performed without payment.  However, Plaintiff responds that, in his Complaint, he alleged that K-T directed Plaintiff "to perform substantially more asbestos abatement work, and in differing locations, than was originally anticipated." (Compl., ¶ 31; see also Complaint, Exhibit D (asbestos abatement was necessary before other construction work could commence)).  Plaintiff argues that K-T directly received the benefit of Plaintiff's abatement and removal of asbestos, without which K-T could not proceed with its construction of the Project.  As to Centerre and Berkley, Plaintiff responds that it alleged Centerre wrongfully withheld roughly $585,000 of the $822,799 authorized by the VA for payment to Plaintiff under the third amendment, thereby conferring a direct monetary benefit on Centerre from the work

20

performed by Plaintiff.  (Compl., ¶ 47–51.)  Plaintiff also alleged that Centerre wrongfully deducted another $73,540 from the Plaintiff's subcontract through the fourth amendment to pay its own attorneys' fees.  (*Id.*, ¶¶ 54–56.)  Finally, Plaintiff alleges Centerre benefitted from Plaintiff's abatement and removal of asbestos on the Project.  (*Id.*, ¶ 31.)  The court finds Plaintiff's allegations sufficient to satisfy the second element as to these defendants.

Regarding the third element, the defendants argue, citing *Redd Iron, Inc. v. Intel Sales and Serv. Corp*, 200 P.3d 1133, 1138 (Colo. App. 2008), that Plaintiff's allegations that it has not been paid is insufficient to show an unjust enrichment claim.  However, in *Redd*, the court was dealing with a summary judgment motion and sought to determine whether the elements of unjust enrichment had been established by the facts, not whether the elements were well-pleaded.  *See Redd Iron*, 200 P.3d at 1135.  This court finds Plaintiff's allegations are sufficient at the pleading stage.

Therefore, for the foregoing reasons, the defendants' motions to dismiss the quantum meruit and unjust enrichment claims properly are denied.

## 5. *Motion for Stay*

In the alternative to dismissal of Plaintiff's claims against them, the defendants request that the case be stayed pending exhaustion of the statutory and contractual claims disputes process.

Courts in this District have long noted that the Federal Rules of Civil Procedure do not explicitly provide for a stay of proceedings in a lawsuit.  *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02–cv–01934–LTB–PAC, 2006 WL 894955 (D. Colo. Mar. 30, 2006).

However, the Court has construed Fed. R. Civ. P. 26(c) to permit a stay of discovery "for good cause, to protect a party from undue burden or expense," especially when dispositive motions are pending. *Id.* The party who seeks a stay of discovery has the burden of demonstrating good cause, and "cannot sustain that burden by offering simply conclusory statements." *Tr. of Springs Transit Co. Emp.'s Ret. & Disability Plan v. City of Colorado Springs*, No. 09–cv–02842–WYD–CBS, 2010 WL 1904509, at *4 (D. Colo. May 11, 2010). Generally, the Court requires a "particular and specific demonstration of fact" in support of a request for a stay. *Id.*; *see also Christou v. Beatport*, LLC, No. 10–cv–02912–CMA–KMT, 2011 WL 650377, at *1 (D. Colo. Feb. 10, 2011).

In the context of ruling on a motion to stay, the Tenth Circuit Court of Appeals stated almost thirty years ago that "the right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983). Hence, it has long been recognized that stays are generally disfavored in this district, although the decision to grant or deny them invokes the discretion of the Court under the circumstances at issue. *See, e.g., id.*

The factors to be applied by the Court in determining the propriety of a stay are: (1) Plaintiff's interests in proceeding expeditiously with the action and the potential prejudice to Plaintiff resulting from a delay; (2) the burden on the Defendants; (3) the convenience to the Court; (4) the interests of persons not parties to the litigation; and (5) the public interest. *String Cheese Incident*, LLC, 2006 WL 894955 at *2.

### A.      Plaintiff's Interests

There is no question Plaintiff will be prejudiced if this case is stayed pending resolution of the CDA process.  Plaintiff completed its work on the Project on July 17, 2012 (Compl., ¶ 43) and began efforts to obtain payments on the amounts due to it at that time (*id.*, ¶ 44).  Plaintiff's interests in proceeding with the lawsuit are manifest, as are Defendants' interests in avoiding or delaying it.  Here, staying the case would further delay the resolution of Plaintiff's claims.

### B.      Defendants' Burden

The defendants argue that, to litigate prior to the conclusion of the statutory, regulatory, and contractual disputes resolution procedure would waste the parties' time.  However, none of the defendants argue how they will be prejudiced or why litigating the case will cause an excessive burden.  This factor weights against a stay.

### C.      Convenience to the Court

The defendants cite to other cases that have stayed payment bond claims by subcontractors against sureties because the subcontracts required submission of claims to arbitration first, and the District Courts noted that the interests of judicial economy and consistency favored a stay.  Plaintiff points out that the Federal Arbitration Act, 9 U.S.C. § 3, requires courts to stay litigation pending arbitration if an agreement to arbitrate exists in writing.  Plaintiff argues there is no arbitration provision in the subcontract at issue here, nor is there any analogous provision pursuant to which the Court is required to stay this case.  Moreover, the court notes that, "ordinarily the fact that a prime contractor has a claim for the same amounts pending under the 'disputes clause' of the prime contract, does not affect Miller Act cases."

*Fanderlik*, 285 F.2d at 942.  The court finds that entry of a stay may cause significant delay of the resolution of this matter, which in turn makes the Court's docket less predictable and less manageable.  This factor also weighs against a stay.

### D.   Interests of Nonparties and Public

With regard to the fourth factor, the defendants have not identified any nonparties with significant particularized interests in this case.  Accordingly, the fourth *String Cheese Incident* factor neither weighs in favor of nor against staying this matter.  With regard to the fifth factor, the court finds that the public's only interest in this case is a general interest in efficient and just resolution.  Avoiding prolonged litigation that does not move forward is in the public's interest. Thus, the fifth *String Cheese Incident* factor weighs against a stay.

Balancing the five *String Cheese Incident* factors, the court finds that a stay of discovery is not appropriate in this case.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that

1.      "Turner Construction Company's Motion to Dismiss" (Doc. No. 37) and "Kiewit Building Group's Motion to Dismiss" (Doc. No. 68) be **GRANTED** and that the claims against them dismissed for failure to meet the governing pleading standard;

2.      "Kiewit-Turner's Motion to Dismiss Second and Fourth Claims for Relief Against Kiewit-turner, Or, in the Alternative, Motion to Stay" (Doc. No. 30) and "Kiewit-Turner Sureties' Motion to Dismiss Plaintiff's Second and Fourth Claims for Relief, Or, in the Alternative, Motion to Stay" (Doc. No. 33) be **DENIED**;

3.      "Defendant Centerre Government Contracting Group, LLC's Motion to Dismiss Plaintiff's First, Third, Fifth, Sixth and Seventh Claims for Relief Or, in the Alternative, Motion to Stay the Proceedings" (Doc. No. 51) and "Defendant Berkley Regional Insurance Company's Motion to Dismiss Plaintiff's First and Third Claims for Relief Or, in the Alternative, Motion to Stay the Proceedings" (Doc. No. 55) be **GRANTED** as to Plaintiff's First Claim for Relief, for which this Court lacks federal question subject-matter jurisdiction over Defendants Centerre and Berkley, and **DENIED** in all other respects.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 3rd day of March, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge